JULES P. CHARTRAND & others, executors, *vs.* NEWTON TRUST COMPANY.

Middlesex.    November 13, 1936. — December 29, 1936.

Present: RUGG, C.J., PIERCE, FIELD, & QUA, JJ.

*Mortgage*, Of real estate: foreclosure.

In a suit to set aside a sale in foreclosure of a mortgage, evidence respecting the price received, the number of bidders, the amount of cash deposit required at the sale, and whether the sale should have been postponed did not require a reversal of a finding that the sale was properly conducted.

BILL IN EQUITY, filed in the Superior Court on January 29, 1936.

The suit was heard by *Williams*, J.

*F. M. Carroll*, for the plaintiffs.

*A. E. Whittemore*, for the defendant.

PIERCE, J.    This is a bill in equity to set aside a mortgage foreclosure of certain real estate in Newton, Massachusetts, on the ground that the sale was improperly

conducted. It is before this court on the plaintiffs' appeal from a final decree of the Superior Court dismissing the bill with costs, pursuant to findings, rulings and order of the trial judge.

The testimony warranted the finding of the following facts: The plaintiffs are executors of the will of Michel A. Chartrand, who died on December 4, 1934. The defendant is a Massachusetts banking corporation having its place of business in the city of Newton. On October 14, 1924, said Chartrand executed a mortgage to the defendant in the sum of $10,000, upon certain real estate in the city of Newton, consisting of approximately thirty-seven thousand square feet of land, upon which is a brick and stucco residence of fourteen rooms.

The trial judge found and ruled "that there was a valid foreclosure sale properly conducted in good faith and, as a matter of fact and law, there is no reason for this court's upsetting the sale."

There was a conflict in the evidence concerning the circumstances under which the sale took place, but there was ample evidence of the following facts: In November, 1935, the plaintiffs, as executors, obtained a license from the Probate Court for Middlesex County allowing them to sell the property in question for $11,000 or for a larger sum. At this time the amount of the mortgage on the property was $9,250. The plaintiffs were unable to effect the sale they were licensed by the Probate Court to make. On November 27, 1935, "the mortgage in question was in default because of failure to pay interest and to pay the municipal taxes for [the year] 1935," and on that date the defendant mortgagee caused to be published in the Newton Graphic, a newspaper published in the city of Newton, a notice of the sale of the property to be held on December 26, 1935, at 12:30 P.M. on the premises. By this notice the purchaser was required to make a cash deposit of $500 at the time and place of sale. Commencing on December 20, 1935, the defendant caused to be published in the same newspaper a new notice of sale of the mortgaged premises, to be held on January 15, 1936. This notice stated that a

cash deposit of $1,500 would be required. Copies of the notice were sent to the plaintiffs, to their attorney, and to fifteen other persons who had property in the neighborhood. On January 15, 1936, a representative of the defendant and the auctioneer appeared on the premises at the announced time, and the auctioneer adjourned the sale for one week — to January 22, 1936, at 12:30 P.M. on the premises. While there was evidence that the defendant desired to postpone the sale on January 15, 1936, because of the illness of the attorney who was handling the foreclosure for the defendant, there was also evidence that at that time no representative of the plaintiffs nor bidders appeared. On the conflicting evidence the trial judge found: "Representatives of the defendant mortgagee were present on the premises at the time the sale was to take place, and the auctioneer, properly and in accordance with law, adjourned the sale to January 22, 1936, at the same time." Subsequently, one of the plaintiffs, on January 16, 1936, was informed of the postponement and of the date (January 22, 1936) on which the sale was to be made. On January 22, 1936, the ground in the vicinity of the premises was covered with snow, but snow had been removed from the roads and sidewalk and the day was fair. Shortly before the time appointed for the sale, representatives of the defendant and the auctioneer appeared on the premises and the auctioneer's flag was hung on a gate post of the entrance leading to the house. No one other than the above mentioned persons appeared at the time appointed. A representative of the defendant bid $6,000 for the premises, and they were sold to it.

An officer of the bank, with long real estate experience in Newton, testified, subject to the plaintiffs' exception, that the property was reasonably worth at the time of the foreclosure and had a market value of $6,500 to $7,000. The auctioneer testified, without objection by the plaintiffs, to the effect that he was a real estate broker in Newton and had been such for more than ten years; that he was familiar with real estate values in Newton; and that in his opinion the property was worth $6,000. Two of the plaintiffs tes-

tified that the property was worth between $17,000 and
$18,000. The trial judge found that "At the time of such
adjourned sale, representatives of the defendant mort-
gagee with the auctioneer were again present on the prem-
ises and the foreclosure sale took place. The sale was con-
ducted properly and the premises sold were bid in by the
defendant mortgagee for the sum of $6,000"; that "no
other bidders were present"; that the price obtained "was
fairly adequate"; and that while there was a heavy fall of
snow on the ground on January 22, 1936, there was no
reason to believe that other bidders would have been pres-
ent if conditions had been better, there having been no
other bidders present on January 15, 1936, when the weather
was fair. Compliance with the formalities of publication
and notices on each date was admitted by the plaintiffs.

The arguments of the plaintiffs are directed mainly to
establishing the proposition that various circumstances in
connection with the sale are sufficient to show that it was
improperly conducted. The principles of law applicable
to the case at bar are well settled. Thus a mortgagee, in
exercising a power of sale contained in a mortgage, is
bound to act in good faith and to exercise reasonable dili-
gence to protect the interests of the mortgagor. *Sandler
v. Silk*, 292 Mass. 493, and cases cited at page 496. The
circumstances relied on by the plaintiffs as showing a breach
of such duty are the inadequacy of the amount for which
the property was sold, the holding of the sale under adverse
weather conditions, and the requirement that the buyer
make a deposit of $1,500 at the time and place of sale. The
burden of proving that the sale was improperly conducted
rested on the plaintiffs. *Vahey* v. *Bigelow*, 208 Mass. 89,
93. *Taylor* v. *Weingartner*, 223 Mass. 243, 248. *Cambridge
Savings Bank* v. *Cronin*, 289 Mass. 379, 382. Mere inade-
quacy of price obtained will not invalidate a sale unless it
is so gross as to indicate bad faith or lack of reasonable dili-
gence. *King* v. *Bronson*, 122 Mass. 122. *Clark* v. *Simmons*,
150 Mass. 357. *Sandler* v. *Silk*, 292 Mass. 493, 497. In the
case at bar there was testimony by a real estate broker, who
was familiar with sales of land in the city of Newton, which

was received without objection by the plaintiffs, to the effect that the property was worth only $6,000. There was also testimony to the effect that it was worth $11,000, and testimony of the plaintiffs that it was worth $17,000 or $18,000. The trial judge made no findings as to the actual or market value of the property, but did find that the price received was fairly adequate. On the evidence it cannot be said that the price received was so grossly inadequate as to invalidate the sale. Compare *Austin* v. *Hatch*, 159 Mass. 198, 199; *Gadreault* v. *Sherman*, 250 Mass. 145, 147, 150. The fact that a representative of the defendant was the only bidder does not establish that the price received was so grossly inadequate as to spell bad faith. *Learned* v. *Geer*, 139 Mass. 31, 32. *Flynn* v. *Curtis & Pope Lumber Co.* 245 Mass. 291, 297.

In connection with the arguments of the plaintiffs, and their requests that "Because of the difficult conditions of travel following the blizzard of the Sunday before the defendant did not reasonably protect the interests of the mortgagor in conducting the mortgagee's sale," and that "Sale of the mortgaged property under the power of sale was not conducted with reasonable protection of the mortgagor's interest because the interior of the residence was not made accessible for inspection or examination," the facts must be considered that the day of the sale was fair and that some snow had been removed from the street and sidewalk in the neighborhood where the sale took place. It is true that a mortgagee may, and in some instances should, in the exercise of reasonable discretion adjourn a sale. *Dexter* v. *Shepard*, 117 Mass. 480, 485. It is not alleged in the bill of complaint, nor does the reported evidence show, that an adjournment would have resulted in a larger attendance or an increased price, but there was evidence, on which the trial judge presumably relied, that no other bidders were present on January 15, 1936 — the first announced date of sale — despite the fact that weather conditions were good on that date. It is to be noted that the trial judge found, inferentially, that neither the plaintiffs nor their representatives attended the sale though they

knew that it was to take place. It is to be further noted that it is not alleged in the bill and there is no evidence in the record to show that the plaintiffs endeavored to induce others to attend the sale and bid upon the property. In all the circumstances, the plaintiffs have no standing to attack the sale on the ground that failure to postpone it showed bad faith or lack of reasonable discretion upon the part of the defendant. *King* v. *Bronson,* 122 Mass. 122, 127–128. *Radley* v. *Shackford,* 226 Mass. 435, 437.

The contention of the plaintiffs, that they were prejudiced by the requirement in the second notice of sale of a cash deposit of $1,500 to be paid at the time of the sale, has no force, in view of the facts that the power of sale given the defendant is to be construed as authorizing the mortgagee to make a sale for cash to be paid at the time of the sale, and that the judge found that the sale was conducted in good faith. *Model Lodging House Association* v. *Boston,* 114 Mass. 133, 139. *Pope* v. *Burrage,* 115 Mass. 282, 285. *Wing* v. *Hayford,* 124 Mass. 249, 253. The published notice of the requirement of a cash deposit of $1,500 distinguishes the case at bar from the case of *Kavolsky* v. *Kaufman,* 273 Mass. 418. Compare *Conway Savings Bank* v. *Vinick,* 287 Mass. 448, 452, 453.

The plaintiffs contend that a representative of the defendant had assured them that the defendant would protect them at the sale, if a bid not within $1,000 of the amount of the balance due on the mortgage note was made. There was no finding by the trial judge that such an agreement was made. A representative of the defendant testified that, upon being asked what would happen at the sale, he had told the plaintiffs that if someone bid within $1,000 of the defendant's claim it would probably sell the property at that figure. Such a statement does not show any agreement on the part of the defendant to make a bid of an amount within $1,000 of the balance due on the mortgage note, nor did it show what the defendant would do if no bid were made. In these circumstances it cannot be said that the plaintiffs were reasonably misled or were induced

to rely on the statement of the defendant's representative to their damage.

The findings of the trial judge were proper and should stand.

*Decree affirmed with costs.*