LOVELAND ET AL. V. CLARK ET AL.

1. When it appears in the recital of a deed of trust that H. and K., as trustees, "have power to act severally, and each independent of the other;" and where it is further provided in the body of the deed "that the proceeds of the sale under the deed shall be paid to the trustees, or either of them," and again, "that the receipt of the trustees, or either of them, shall be conclusive," etc.; and where there is nothing in the selling clause inconsistent with the general provision that the trustees may execute their trusts severally; the intentions and agreements of the parties being set out by plain and unequivocal expressions, not to be rejected on account of their informal arrangement,— inference of an intention to except the powers of sale, from the general provisions that the trustees might act separately, is inadmissible, and the sale of the property under the trust deed by one of the trustees, and his deed of sale to a purchaser, is valid, and not affected by the non-joinder in the sale of the other trustee.

2. A notice of a trustee's sale, stating the general locality of the property, and its general metes and bounds, county, township, range, section, and subdivision of section, though it excepts certain portions in such a way as not to show how much land is actually to be sold,— the description, too, being the same as that employed in the deed of trust and in the original deed by which the property was conveyed to the grantor in the deed of trust,— is not so defective as to be ground for setting aside the deed, in the absence of proof that the debtor was actually prejudiced.

3. A trust deed authorizing the trustees "to sell and dispose of said premises" leaves them to exercise a sound discretion, and sell the lands as a whole or in parcels; and their failure to advertise the land in parcels will not invalidate the sale.

4. It is competent for one who sells and conveys his land to another, and then takes back a deed of trust to secure the promised payment of the purchase price, to bid, either for himself or as the agent of another, in the sale of the property under the deed of trust.

*Appeal from District Court of Arapahoe County.*

THIS was a suit in equity commenced in the district court of Arapahoe county, on the 12th day of May, 1887, to set aside certain conveyances. It appears that, on or about the 1st day of May, 1884, Rufus Clark, one of the appellees, sold and conveyed to W. A. H. Loveland and

T. C. Henry certain lands situate in Arapahoe county. The consideration was $70,000, $10,000 of which was paid in cash, the balance to be paid in instalments evidenced by four promissory notes, secured by deed of trust upon the land, John R. Hanna and Charles B. Kountz being named as the trustees. Among other things, it is stated in said deed of trust "that whereas T. C. Henry and W. A. H. Loveland have executed their four promissory notes, bearing even date herewith, payable to the order of Rufus Clark, on or before October 20, 1884, May 1, 1885, May 1, 1886, and May 1, 1887, after the date thereof, respectively, for the aggregate sum of $61,185.80, with interest thereon from date at ten per cent. per annum until paid." And it was also provided in said deed of trust as follows: "That in case of default in any of said payments of principal and interest, or a breach of any of the covenants or agreements herein, then and in that case the whole of said principal sum hereby secured, and the interest to the time of sale, according to the tenor and effect of said indebtedness, shall and may at once become due and payable, anything in the said notes to the contrary notwithstanding, and the said premises to be sold in like manner and with the same effect as if the said indebtedness had matured." On June 29, 1886, the trustees in said deed of trust named, and at the request of Rufus Clark, the *cestui que trust*, proceeded to advertise for sale the lands in the deed of trust mentioned, stating in their advertisement that said property was so advertised for sale "on account of default in the payment of the two notes first above described, and because all said notes, with the interest thereon, are unpaid, except $135 applied as principal, the sum of $844.51 applied as interest on said notes." On the 3d day of August, 1886, all of the said lands were sold at the trustee's sale, under and by virtue of the aforesaid advertisement. At this sale Rufus Clark, the *cestui que trust*, became the purchaser, and on the same day, August 3, 1886, John R. Hanna, one of the

trustees, executed a trustee's deed to him.  This trustee's deed was duly filed for record and recorded in the recorder's office of Arapahoe county, August 4, 1887.  Afterwards the said W. A. H. Loveland and T. C. Henry conveyed all their right, title and interest in and to the said lands to other parties, and through these other parties the present plaintiffs, Frank W. Loveland and others, acquired their title.  The relief prayed for by the plaintiffs was that the trustee's deed made by John R. Hanna, as trustee, to the defendant Rufus Clark, August 4, 1886, and all subsequent conveyances by which the defendants, or any of them, pretend to claim or have acquired title to any of the lands sold under said deed of trust, may be canceled and held for naught; that the defendant Rufus Clark may be required, upon the payment to him of the balance due on the purchase price of said lands, and interest on said balance, and any taxes that he may have paid on said lands, which the purchasers were required to pay by the terms of the purchase, to execute a good conveyance to these plaintiffs for all the lands included in the deed of trust herein mentioned; and for other and general relief.

The defendants answered, and upon the hearing a decree was rendered in favor of the defendants (the appellees), to reverse which decree the plaintiffs below appealed to this court.

Messrs. MARKHAM and DILLON, TELLER and ORAHOOD, J. P. BROCKWAY and E. A. CLARK, for appellants.

Messrs. WOLCOTT and VAILE, D. V. BURNS, and BENEDICT and PHELPS, for appellees.

ELBERT, J.  1. Hanna and Kountz were the trustees named in the deed of trust.  While both joined in the notice of sale, Hanna alone made the sale and executed the deed to the purchaser.  The claim is that the power was joint, that one alone could not exercise it, and that

the trust sale was void.   Undoubtedly, where the grant is to two or more trustees, all must join in the execution of the trust, unless it should be otherwise provided.   It cannot, however, be doubted that one of two or more trustees named in a deed of trust may execute the trust if by its terms the deed so provide.   It is purely a matter of contract between the parties, and the terms of the contract are to govern.   Whether or not the deed we are considering provides that either one of the trustees may act is a disputed question.   John R. Hanna and Charles B. Kountz are named in the deed of trust as trustees, parties of the second part, "with power to act severally, and each independent of the other."   While this provision appears among the recitals, rather than in the body of the deed, it is not for this reason to be rejected.   The collocation is informal; but plain and unequivocal provisions, showing the intention, and in which is lodged the agreement of the parties, are not to be rejected or given less force because of informal arrangement.   It is claimed, however, that this general declaration of power on the part of the trustees to act separately is qualified, not expressly, but inferentially, by the language used in the body of the deed.   An examination of the deed discloses that in two separate paragraphs there is provision that the proceeds of sale "shall be paid to the second parties, or either of them."   In another paragraph it is provided "that the receipts of the said second parties, or either of them, shall be conclusive," etc.   The power of sale is as follows: "That in case of default of payment of said notes, or any part thereof, or interest thereon, according to the tenor and effect of said notes, then it shall and may be lawful for the said party of the second part, his heirs, assigns, or successors in trust, to sell and dispose of said premises, * * * and make, execute and deliver to the purchaser or purchasers at such sale good and sufficient deeds," etc.   There is nothing in the several provisions which we have mentioned authorizing

either of the trustees to receive the proceeds of sales, and to give receipts, etc., inconsistent with the general provision that they may execute the trusts severally. It is but a repetition of what has already been declared respecting their separate power. Neither is there anything in the selling clause inconsistent with this general provision. There is no repetition, as in the three clauses mentioned, of what has already been declared to be the separate powers of the trustees; and, upon this absence of reiteration, we are asked to infer an intention upon the part of the parties to the agreement to except the power of sale from the operation of the general provision declaring that the trustees may act severally. The maxim, *expressio unius est exclusio alterius*, is relied upon by counsel for appellants in support of this construction. We are unable to see that the maxim has any just or proper application. Redeclaring of one or more powers that which has already been declared of all the powers in the deed can have no special force. The power to act severally, in the cases specified, is not strengthened by repetition, nor is the power to act severally in other cases weakened by the failure to repeat. If it is to be called enumeration, the most that can be said of it is that it is a special enumeration embraced within and covered by a broader and more general declaration, and no inference of any value or force can be predicated of it. It is not, however, in truth, a case of enumeration. within the meaning of the maxim, but of repetition, and we know of no rule of exclusion by repetition. In the interpretation of instruments, such a meaning is to be given to them as may effectuate, to the fullest extent, the intention of the parties. In the deed before us, John R. Hanna and Charles B. Kountz are named as trustees, "with power to act severally, and each independent of the other." This is a plain provision, and covers all acts under the power. An exception, if intended, should have been expressed. Where parties

have expressed their intention, inference of a different intention respecting the same matter is not admissible. If it be permissible at all to subtract from what is expressed, by an exception based on inference, the inference should certainly be of such clearness and force as to be certain and unavoidable. In the view we take, it is unnecessary for us to discuss the doctrine of the case of *Smith v. Black,* 115 U. S. 308; 6 Sup. Ct. Rep. 50, to which we are cited by counsel for appellant.

2. The second objection goes to the sufficiency of the description of the property in the notice of sale. The notice of sale describes the property *verbatim* as it is described in the trust deed, and the trust deed follows the description of the original deed from Clark to Loveland and Henry. There is no uncertainty in the general description. Three tracts of land of eighty acres each, and one of forty acres, are clearly designated by township, range, section and subdivision of section and quarter section. The difficulty arises from the exceptions made, namely: " Excepting from the above the following described land, to wit: Beginning at the northwest corner of the southwest quarter of the northwest quarter of section twenty-two (22), township four (4) south, of range sixty-eight (68) west, in Arapahoe county, Colorado; running thence south six hundred and sixty (660) feet; thence east, to the west line of the Littleton road; thence north six hundred and sixty (660) feet, to the north line of said forty (40) acre tract; thence west, to the place of beginning; excepting, also, all such portions of the first-described lands as have been heretofore sold by the Denver Circle Real Estate Company; excepting, also, a strip of land one hundred and fifty (150) feet wide, running nearly north and south through the said land heretofore conveyed by the said Clark to the Denver & Rio Grande Railway Company; and subject, also, to ditches and ditch rights and public highways, and fifty-seven one-hundredths (57-100) of an acre conveyed to the

Denver & New Orleans Railroad Company,— lying and being situate in the county of Arapahoe county, in the state of Colorado." The claim is that these exceptions leave the description of the property in the notice of sale fatally uncertain. This result is especially claimed of the exception, namely, "excepting, also, all such portions of the first-described lands as have been heretofore sold by the Denver Circle Real Estate Company." In contracts affecting title to real estate, such imperfect descriptions are without excuse. Nevertheless, courts not infrequently have to deal with them. In the case of *Pipe v. Smith*, 4 Colo. 444, there was excepted from the grant "what lots have heretofore been conveyed, and what now remain in litigation, and the title yet undetermined by the probate judge holding them in trust for the occupants of the town-site of Golden City, under the preemption laws of congress, for the use of the occupants thereof. It was there held that it was competent to make certain the subject-matter of this exception by evidence *aliunde*. It is said: "An exception in a deed is the taking of something out of the thing granted which would otherwise pass by the deed; and, in general terms, it is said that it ought to be stated and described as fully and accurately as if the grantee were the grantor of the thing excepted, and the grantor in the deed were made the grantee in the exception. Whatever may pass by words of grant may be excepted by like words, and the same consequences attach to such an exception as would attach had it been a grant. 3 Washb. Real Prop. 431, 435. Having reference to the character of an exception in a conveyance, the same general rule as to the admissibility of parol evidence must apply. Where the subject-matter of the exception is described in general terms, parol evidence is admissible to give it effect as if it had been a grant." This gives us the rule respecting such general descriptions, where they occur in deeds of conveyance, and where identification of the thing granted or excepted

is essential to pass or reserve title. In the case before us, as before noted, the description of the property is the same in the original deed and the trust deed as in the notice of sale, and all the parties to this controversy rely upon it as sufficiently certain to pass title. If the description in the deeds of conveyance can be sustained, it must be by appeal to the rule which we have cited. We do not decide, but we accept the sufficiency of the description in both the original and trust deeds as conceded. The appellants, however, challenge the description in the notice of sale as insufficient, while they rely upon its sufficiency in the original deed. If good in the conveyance, is there any ground for holding it fatally defective in the notice of sale? The office of the description is the same in both cases, namely, identification. The purpose of the identification is different. In the one case, it is essential to pass title, and absolute certainty is necessary; in the other, its purpose is to notify the public of what is to be sold, and reasonable certainty is all that is required. The general rule is that "no particular form of notice of sale under a trust deed is required by law. It is sufficient if the description of the land is reasonably certain, so as to inform the public of the property to be sold." *Newman v. Jackson*, 12 Wheat. 570; *Reading v. Waterman*, 46 Mich. 110; *Stephenson v. January*, 49 Mo. 465; 2 Perry, Trusts, § 782. In the notice before us there is no uncertainty as to the locality of the land to be sold, or as to its general metes and bounds. The county, township, range, section and subdivisions of sections are all given, and any one can easily go to it and upon it. The exceptions leave it uncertain how much of the sectional subdivision described remains to be sold. This is not well. But is it fatal? Measurably, it is uncertainty as to detail; the subject-matter of statement and explanation at the auction; a fact the general public might well understand and anticipate, as they would well understand and anticipate that any lands offered at the auction

would presumably be definite in amount and boundaries. As a matter of fact, there does not appear to have been any difficulty at the sale in so offering it. But it is insisted that bidders would nevertheless be deterred. It is not intended that the notice should be so complete and certain as to render any further inquiry or inspection unnecessary. The most accurate and elaborate description, giving distances in chains and feet, and designating the courses by the cardinal points of the compass, with degrees of variation therefrom, would leave the public uninformed, except generally, as to the location of the property; yet the sufficiency of such a description in a notice of sale could not be questioned. Without commending the description in this notice, and assuming, as do all parties to this suit, that it is capable of being applied to the subject-matter, we do not see that it would necessarily fail to attract bidders, or in any other way prejudice the interests of the debtor as of course. Without any proof or probability that such was the effect, we are unwilling to presume such an effect in the absence of any fraudulent purpose or practice, and in the presence of the fact that the trustee adopted, in his notice of sale, a description of the property employed by all parties to the transaction. It is difficult to see upon what ground of equity and good conscience the debtor is entitled after sale to insist, as a ground for annulling the sale, that the description of his property in the notice of sale should have been more certain than that by which he took title, and by which he afterwards conveyed it by deed of trust for the purpose of securing the purchase money. If the notice of sale describe the property as it is described in the deed of trust, in the absence of any provision requiring more, we think it should be held sufficient. *Reading v. Waterman,* 46 Mich. 110; *Stickney v. Evans,* 127 Mass. 202; *Association v. Boston,* 114 Mass. 136; *Robinson v. Association,* 14 S. C. 148.

3. No authority is cited in support of the objection

that the property was not advertised for sale in parcels. The notice ran, "and so much thereof as shall be necessary to fully pay the balance due on said note," and, to this extent, indicated contingently a sale of less than the whole. But, independently of this, the power was general, "to sell and dispose of said premises." As, in such case, it is for the trustee in good faith to exercise a sound discretion, and to sell the land as a whole or in parcels, it would seem to follow that he may exercise the same discretion about so advertising it. As it is held that a sale once made will not be set aside merely on the ground that the property was sold as a whole, when it was capable of easy division, it is difficult to see how the failure to advertise it to be sold in parcels could be made the basis of such a decree. 2 Jones, Mortg. 1857 et seq.; *Gray v. Shaw*, 14 Mo. 341; *Singleton v. Scott*, 11 Iowa, 589. "The true question to be considered is not so much whether there has been a literal and technical, as a fair and reasonable, compliance with the terms of sale, and a *bona fide* disposition of the property." *Horsey v. Hough*, 38 Md. 139; *Markey v. Langley*, 92 U. S. 154. As a matter of fact, with the view of securing the best price, the property was first offered in parcels, and then as a whole, in pursuance of the announcement made by the trustee at the commencement of the sale. Criticisms of this proceeding, so eminently fair and just to all parties, need not be answered. Had the aggregate sum of bids for parcels reached the amount of the indebtedness and expenses before the last parcel was offered and sold, it would be necessary to consider the alleged "defect of power" to thereafter offer and sell it as a whole. In the absence of facts making it applicable, we need not discuss the law. Counsel for appellants call our attention to, and lay stress upon, a certain agreement between Clark and McIntosh. Although it is not strictly in the case, we have examined it. Its effect is to make Clark the agent of McIntosh in the matter of his bids. Had

this matter been alleged in the complaint as a ground of relief, it could not have availed. It was entirely competent for Clark to bid or not for himself, or, if he chose, to bid as the agent of another. It does not appear to have been, either in its intent or effect, so far as disclosed by the contract or the evidence, a combination to prevent bidding. Nor can any fraud in fact or in effect be predicated of it. No bidder was taken out of the field. Clark wanted his debt, not the property. McIntosh wanted the property, and Clark bid for him as his agent, and under his direction. It is true he did not bid more for the property than was necessary to secure it, but what bidder ever does? The original purchase price was $70,000. The indebtedness, including interest and taxes, amounted to $74,892.41. The amount bid by Clark under this agreement was $76,800. Clark subsequently transferred the property to the South Denver Real Estate Company, which McIntosh appears to have represented, for $70,000. We see nothing in all this that demands that the sale should be set aside.

We have thus noticed all the leading questions discussed by counsel. Much is said about the strict rule of construction that obtains in cases of this character. Deeds of trust give more or less opportunity for fraud and unconscionable oppression, and sales under them are carefully scrutinized and questioned, to the end that it may be seen that the trust powers have been exercised fairly and in good faith, and that no substantial wrong has been committed. This is the extent of the rule. There is no search for technical irregularities upon which sales are to be set aside as of course. One who sells and conveys his land to another and takes back a deed of trust to secure the promised payment of the purchase price, as in this case, is entitled, upon default, to either his money or his land. If he enforce his contract fairly and without fraud, there is no warrant for sacrificing him on the altar of strict construction. Creditor and debtor stand *in pari*

*statu;* and their contracts, like other contracts, are to be construed fairly, and with justice to all parties. The bill of complaint does not charge, nor does the evidence disclose, any fraud in fact. There is no suspicion of any want of fairness and good faith upon the part of the trustees, or either of them. Every reasonable effort appears to have been made to dispose of the property at the highest and best price for the benefit of all parties concerned. A fair price was obtained, all things considered. The preponderance of testimony is to this effect. There certainly is no ground for saying that the price was grossly inadequate. The mortgagors and mortgagee were all present and bidders at the sale, and found nothing to object to or criticise. The lands in question, since the date of the trust sale, have largely appreciated in value. Hence this suit. In the absence of any fraud or substantial irregularity affecting injuriously the rights of the complainants, the purchaser at the trustee sale and his grantees should be protected in their title. The decree of the court below is affirmed.

*Affirmed.*

### ON REHEARING.

PER CURIAM. We have carefully re-examined the grounds of our decision in this case in connection with the petition for rehearing, and the brief in support of the same. We do not find that we have overlooked any material fact in the case, or any principle of law that would require a change of our opinion. We do not find that we have overlooked the words used in the deed construed, or given them other than their plain meaning and effect. It is not believed that any authority cited is inconsistent with what is declared as the law in this case. On the other hand, we find much that is confirmatory of the correctness of the views which we have expressed. In this connection we cite the doctrine of *Moore v. Griffin*, 22 Me. 354. Upon the matter of notice no stronger

view is urged than was urged upon the original hearing. The application of the strict and critical requirements insisted upon by counsel respecting notice and conduct of sale would avoid most, if not all, sales of this character, and leave this customary and much-used security practically valueless.   There was in all respects a *bona fide*, reasonable and substantial compliance with the law in the execution of the trust created by the Loveland and Henry deed, and with this the law is content.   In our former opinion we did not discuss the power of the trustee to first offer the premises in parcels, and then as a whole, and to accept the larger bid for the whole, for the reason that, under all the facts of this case, we did not consider it a question requiring discussion.   Upon reconsideration and re-examination, our views on this point may remain unchanged.   In view of the fact that all the points involved have been most thoroughly discussed in printed briefs, in oral argument, and again in the brief on the petition for rehearing, we do not believe that more discussion will give any new or further light. The right of the case, as we have declared it, appears to us too plain and unquestionable to require or admit of further discussion.   The rehearing is denied.

<em>Rehearing denied.</em>